UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-21720-CIV-SEITZ/O'SULLIVAN

UNITED STATES ex rel.
VICTORIA G. GATSIOPOULOS, *et al.*,

        Plaintiffs,

v.

KAPLAN CAREER INSTITUTE, ICM CAMPUS,
and KAPLAN HIGHER EDUCATION CORPORATION,

        Defendants.
_____/

## ORDER GRANTING IN PART MOTION TO DISMISS

THIS MATTER is before the Court on Defendants' Motion to Dismiss the Amended Civil Complaint [DE-47]. This action is brought as a *qui tam* action pursuant to the False Claims Act. Relators allege that Defendants submitted false claims to the United States because Defendants were not in compliance with requirements of the Higher Education Act, which were prerequisites for payment of the claims.).[1] Defendants move to dismiss the False Claims counts of the complaint for failure to state a cause of action and for failure to meet the pleading requirements of Federal Rule of Civil Procedure 9(b). Relator Gatsiopoulos has also brought a retaliation claim which Defendants also seek to dismiss for failure to state a cause of action For the reasons set forth below, the Motion is granted in part and denied in part.

---

[1]This is one of three *qui tam* actions against Kaplan Higher Education Corp. that are before this Court pursuant to an order of the Judicial Panel on Multidistrict Litigation. Defendants have filed motions to dismiss in all three. Because this is the first filed of the three complaints, Defendants have not raised the first-to-file rule as a basis for dismissal in this case. However, it has been raised in the other *qui tam* actions.

### I. Facts and Procedural History

Relator Victoria Gatsiopoulos worked for Defendants[2] from November 2000 until she was fired on December 4, 2007. Her last position with Defendants was as a Senior Career Advisor and Instructor. Relator Dolores Howland worked for Defendants[3] from October 2000 to July 2006 as a full-time Instructor, a part-time evening Instructor, and as Student Advisor. Defendant Kaplan Career Institute, ICM Campus (ICM) is a wholly owned subsidiary of Kaplan Higher Education Corp. (KHEC) and is a recipient of Higher Education Act (HEA) federal student financial aid funds from the United States Department of Education (DOE).

In order to receive the federal student financial aid funds a school must certify to the United States Government (Government) that it is in compliance with the HEA. As part of that certification process, schools execute a Program Participation Agreement (PPA), under which they agree to adhere to certain guidelines, including: (1) that the school will not provide any commission, bonus, or other incentive program based directly or indirectly upon success in securing enrollments or financial aid to any person or entity engaged in student recruiting or admission activities or in making decision regarding the awarding of Title IV, HEA program funds; (2) if the school advertises using job placement rates, it will make available to perspective students the most recent available data concerning employment statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and (3) if the school advertises using job placement rates, it will make available to perspective students the relevant

---

[2] The Complaint does not clearly indicate for which Defendant Gatsiopoulos worked. However, it appears that Gatsiopoulos worked for Kaplan Career Institute, ICM Campus.

[3] The Complaint does not specify for which Defendant Howland worked. However, it appears that Howland also worked for Kaplan Career Institute, ICM Campus.

State licensing requirements of the State in which the school is located.

The Amended Complaint alleges that Defendants violated the PPA by (1) compensating admissions representatives based directly on their enrollment success, including awarding trips to those admissions representatives who enroll more than their quota; (2) advertising job placement rates and then providing inaccurate information to attempt to substantiate the truthfulness of the advertisements; (3) advertising job placement rates and then misrepresenting the actual number of graduated students who secured employment in their designated fields; and (4) advertising job placement rates but not making available the State licensing requirements for the job.

In order to receive Government funding, under the HEA, a program must have a substantiated graduation rate of at least 70%. In order to achieve this, according to the Amended Complaint, Defendants manipulate the rate by encouraging instructors to change students' grades to raise the students' grade point averages to meet the minimum required for graduation. A school receiving HEA funds is also required to have a job placement rate of 70%. Relators allege that Defendants manipulate their job placement statistics in order to meet the 70%. The Amended Complaint also alleges that Defendants coached students to enable them to pass an independently administered exam which is necessary for some students prior to admission. Thus, students who would not be able to pass the exam on their own can be admitted, despite being unqualified for admittance to ICM.

Based on these allegations, Relators have filed a three count complaint. Count I alleges a violation of the False Claims Act, 31 U.S.C. § 3729(a)(1). Count II alleges a violation of the False Claims Act, 31 U.S.C. § 3729(1)(2). Count III alleges a claim for retaliation against Gatsiopoulos. Defendants have moved to dismiss on several grounds: (1) Relators' theory of

recovery, false certification, fails as a matter of law; (2) the complaint does not adequately allege any violations of the HEA or its requirements because it does not meet the pleading standard of Federal Rule of Civil Procedure 9(b); and (3) the retaliation claim fails because it does not allege that Gatsiopoulos engaged in protected conduct.

## II.     Legal Standard for 12(b)(6) Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint and provides that a party may move the Court to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995). Such a motion does not decide whether the plaintiff will ultimately prevail on the merits, but instead whether such plaintiff has properly stated a claim and should therefore be permitted to offer evidence in support thereof. *Brandt v. Bassett*, 69 F.3d 1539, 1550 (11th Cir. 1995). To survive a motion to dismiss, a complaint must contain allegations addressed to each material element "necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 684 (11th Cir. 2001). This material can be either direct or inferential, *see id.* at 683, but it must be factual. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007); *see also Roe*, 253 F.3d at 683. Thus, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Twombly*, 127 S. Ct. at 1965. Pleadings that "are no more than conclusions, are not entitled to the assumption of truth[;] they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Finally, when a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the

plaintiff. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

**III. Analysis**

    **A.**    **The False Certification Theory is a Valid Theory of Recovery Under the False Claims Act**

Defendants argue that Relators do not have a cause of action based on "false certification" because such a theory of recovery fails as a matter of law. However, as this Court has previously held, *see* DE-19 in Case No. 09-MD-02057, there is a cause of action under the False Claims Act when an institution executes a PPA, whereby, in order to be eligible for Title IV funds, it agrees to comply with certain statutory and regulatory requirements, including a ban on incentive compensation for student recruiters, and submits or causes to be submitted requests for funds when the institution is not in compliance with the statutory and regulatory requirements. *See United States ex rel. McNutt v. Haleyville Medical Supplies*, 423 F.3d 1256, 1259 (11th Cir. 2005) (stating that "[w]hen a violator of government regulations is ineligible to participate in a government program and that violator persists in presenting claims for payment that the violator knows the government does not owe [because compliance with the regulation is required for payment], that violator is liable, under the Act, for its submission of those false claims"); *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1176 (9th Cir. 2006) (finding a cause of action under the False Claims Act based on the promises and representations made in the PPA and holding that executing the PPA and agreeing to comply with the statutes and regulations were "'prerequisites,' and 'the sine qua non' of federal funding, for one basic reason: if the University had not agreed to comply with them, it would not have gotten paid."); *United States ex rel. Main v. Oakland City University*, 426 F.3d 914, 917 (7th Cir. 2005) (finding a

5

cause of action under the False Claims Act if the institution knew of the incentive pay ban, told the Department of Education it would comply with the ban, but planned to do otherwise).

As set out in *Hendow* there are four elements for a false certification claim: (1) the submission of a false claim; (2) scienter; (3) the false statement must be material to the government's decision to pay out moneys to the claimant; and (4) an actual claim or call on the government fisc. 461 F.3d at 1171-1173. Further, the execution of the PPA and the promises made therein constitute conditions of payment and are thus material to the government's decision to pay. *Id.* at 1176. Thus, if Relators have adequately pled all four elements of such a claim, the motion to dismiss should be denied. Defendants do not argue that Relators have not pled these elements. Consequently, the Motion should be denied on this ground.

**B. The Complaint Does Adequately Allege Violations of the HEA**

The Amended Complaint alleges several violations of the HEA based on different actions of Defendants. According to the Amended Complaint, each of these violations make Defendants liable under the False Claims Act. Specifically, Relators allege that Defendants violated the HEA by (1) paying incentive compensation to student recruiters; (2) failing to accurately provide job placement rates; (3) failing to provide licensing requirements to prospective students; (4) violating the 70% rule; and (5) violating the ability to benefit test. Defendants argue that Relators have failed to adequately allege violations of the HEA and have not met the pleading requirements of Federal Rule of Civil Procedure 9(b) as to any of these claims.

Rule 9(b) requires that claims of fraud be pled with particularity. The Eleventh Circuit has stated:

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made

> in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (internal quotations and citations omitted). Thus, under Rule 9(b) a plaintiff must plead "the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Id.* Defendants move to dismiss the claims under the False Claims Act because they have not met this standard.

### 1. *Incentive Compensation*

Defendants first assert that Relators' claim that Defendants have violated the HEA's incentive compensation ban does not state a valid claim for relief. The incentive compensation ban prohibits any institution from providing "any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance." 20 U.S.C. § 1094(a)(20).

The Amended Complaint alleges that Defendants compensated Admission Representatives directly on their enrollment success and would terminate them if they did not maintain their numbers. The Admission Representatives who exceed their quotas are rewarded with annual trips. The Amended Complaint specifically refers to a 2005 trip to Puerto Rico, which included spa treatments and tours of old San Juan. Defendants allege that these allegations are not violations of the HEA. First, Defendants argue, based on 34 C.F.R. § 668.14(b)(22)(ii)(A), that such compensation is allowed as long as it is not based *solely* on

enrollment success. However, § 668.14(b)(22)(ii)(A) pertains to "fixed compensation," not bonuses or other rewards. Thus, Defendants reliance on this section is misplaced. Defendants also argue that trips which educate and improve the skills of admissions personnel are explicitly permitted based on a letter from the Deputy Director of the Department of Education, attached to Defendants' motion as Exhibit E. However, the Amended Complaint does not allege such a purpose for the trips. Further, the letter on which Defendants rely, besides being outside of the Amended Complaint, does not carry the same weight as a regulation or statute. *See Main*, 426 F.3d at 917 (noting that memo from Deputy Secretary of Education has no legal effect because it was not published for notice and comment and does not authoritatively construe any regulation). Thus, the actual purpose of the trips and whether such trips are permitted under the regulations appear to be issues more appropriately dealt with in a motion for summary judgment or at trial, not a motion to dismiss.

Lastly, Defendants assert that the HEA does not regulate personnel decisions and thus, Defendants are free to fire Admissions Representatives for failing to meet their numbers. While this may be true, it does not require dismissal of the Amended Complaint because, as set out above, Relators' have stated a valid claim for violation of the incentive compensation ban.

### 2. *Job Placement Rates*

Defendants next assert that Relators have failed to adequately allege a violation of the HEA with respect to job placement rates. The HEA requires that "an institution that advertises job placement rates as a means of attracting students to enroll in the institution [must] make available to prospective students, at or before the time of application (A) the most recent available data concerning employment statistics, graduation statistics, and any other information

necessary to substantiate the truthfulness of the advertisements." 20 U.S.C. § 1094(a)(8)(A). Defendants argue that Relators have failed to allege that Defendants have actually advertised using job placement rates or that Defendants failed to make them available.

The Amended Complaint alleges that Defendants advertise using job placement rates but provides inaccurate information regarding placement rates by manipulating statistics as to students who secure employment in their designated fields of study. The Amended Complaint gives several examples of such manipulations. It further alleges a specific example of a student who was promised a job in a hospital, a big house, and enough money to take her family to Disney World and for a new Lexus.

Defendants assert that these allegations are insufficient to allege a cause of action. First, Defendants argue that the allegation regarding advertising is too conclusory. Second, they argue that there are no allegations that Defendants do not make the statistics available, just allegations that Relators do not agree with Defendants' statistics. Given the pleading requirements of Rule 9(b), Relators have failed to adequately allege the first element of such a claim – that Defendants advertise using job placement statistics. Relators have simply made a conclusory allegation. They have not given a single example of actual advertisements using job placement statistics. This is insufficient for the heightened pleading standard required for a claim of fraud. Thus, Relators' claim based on job placement statistics should be dismissed.

### 3. *Licensing Requirements*

Defendants next argue that Relators have failed to state a cause of action based on Defendants' provision of licensing requirements. The HEA provides that "an institution that advertises job placement rates as a means of attracting students to enroll in the institution [must]

9

make available to prospective students, at or before the time of application . . . (B) relevant State licensing requirements of the State in which such institution is located for any job for which the course of instruction is designed to prepare such prospective students." 20 U.S.C. § 1094(a)(8)(B). Again, advertising using job placement rates is the first element of making a claim under this provision. As set out above, Relators have failed to adequately plead that Defendants advertise job placement rates. Therefore, Relators' claim based on State licensing requirements should be dismissed.

### 4. *The 70 Percent Rule*

Defendants argue that Relators' claim based on the 70 Percent Rule, which requires a 70% graduation rate, should be dismissed because Relators have failed to allege that the Rule applies to Defendants' programs. Defendants argue that under the HEA only certain academic programs are required to meet the 70 Percent Rule, *see* 34 C.F.R. § 668.8(d)-(e), and nothing in the Amended Complaint establishes that Defendants' programs fall within the Rule. Relators respond that it is implied that the rule applies to Defendants' FFEL and Direct Loan programs. However, these are not academic programs.

Nothing in the Amended Complaint indicates which, if any, of Defendants' programs must comply with the 70 Percent Rule and nothing indicates which programs do not comply. Because Relators' must plead fraud with specificity, they have failed to meet the pleading standards necessary to set forth a claim based on the 70 Percent Rule. Thus, Relators' claim based on the 70 Percent Rule should be dismissed.

### 5. *The "Ability to Benefit" Test*

Last, Defendants argue that Relators' claim based on an alleged violation of the Ability to

10

Benefit Test should be dismissed because Relators have not actually alleged a violation. The HEA requires that students who are not high school graduates must "take an independently administered examination and shall achieve a score, specified by the Secretary, demonstrating that such student can benefit from the education or training being offered." 20 U.S.C. § 1091(d)(1). The Amended Complaint alleges that Defendants coach perspective students so that they will pass the exam. Nothing in the Amended Complaint alleges that "coaching" a student violates the statute. Thus, Relators have failed to allege a violation of the Ability to Benefit Test and the claim based on the test should be dismissed.

### C. The Complaint Does Adequately Plead a Retaliation Claim

Lastly, Defendants move to dismiss Gatsiopoulos' retaliation claim because it fails to allege that she engaged in protected conduct under 31 U.S.C. § 3730(h). Under this section, an employee has a retaliation claim against her employer if she suffers adverse job consequences as a result of her "efforts to stop 1 or more violations" of the False Claims Act. 31 U.S.C. § 3730(h). Protected conduct is conduct that "furthered an action filed or to be filed" under the False Claims Act. *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 187 (3d Cir. 2001) (internal quotations omitted). Thus, "[i]f an employee's actions, as alleged in the complaint, are sufficient to support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a *qui tam* action by the employee, then the complaint states a claim for retaliatory discharge under § 3730(h)." *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304 (11th Cir. 2010). Defendants argue that nothing in the Amended Complaint alleges that Gatsiopoulos put her employer on notice that her actions were in furtherance of a potential claim under the False Claims Act.

11

The Amended Complaint alleges that Gatsiopoulos complained to Defendants about unethical and illegal behavior and would report these behaviors to the Department of Education and the State Accreditation Board. Gatsiopoulous met with Defendants' Compliance Manager soon after her July 2006 complaint and provided him with documents that established grade changing and false attendance records. In October or November 2007, the Department of Education made an unannounced visit to ICM. In December 2007, Gatsiopoulos lost her job, allegedly in a work force reduction.

While the allegations in the Amended Complaint are vague, Gatsiopoulos does allege that she complained about illegal activity, threatened to report the activity to the Department of Education, and thereafter the Department of Education made an unannounced visit. Although she did not specifically mention bringing a False Claims Act action, the threat of reporting illegal activity to the Department of Education coupled with the visit from the Department of Education supports a reasonable conclusion that Defendants could have feared being reported to the Government for fraud or sued in a *qui tam* action by the employee  Consequently, at this stage of the action, Gatsiopoulos has adequately pled a claim for retaliation. Thus, Defendants' Motion should be denied as to the retaliation claim.

Accordingly, it is hereby

ORDERED that Defendants' Motion to Dismiss the Amended Civil Complaint [DE-47] is GRANTED in part and DENIED in part:

1. The Motion is DENIED as to Counts I and II to the extent that the counts are based on the incentive compensation plan and GRANTED as to Counts I and II in all other respects, with leave to replead the claims based on the job placement and licensing requirements and the 70

Percent Rule.

    2. The Motion is DENIED as to Count III.

DONE AND ORDERED in Miami, Florida, this 22nd day of December, 2010.

                                                   PATRICIA A. SEITZ
                                                   UNITED STATES DISTRICT JUDGE

cc:     All counsel of record