**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 09-21720-CIV-SEITZ/SIMONTON

UNITED STATES ex rel.
VICTORIA G. GATSIOPOULOS, *et al.,*

      Plaintiffs,

v.

KAPLAN CAREER INSTITUTE, ICM CAMPUS,
and KAPLAN HIGHER EDUCATION CORPORATION,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

THIS MATTER is before the Court on Defendants' Motion to Dismiss Relators' Second

Amended Complaint [DE-97]. This is a *qui tam* action pursuant to the False Claims Act.[1]

Relators allege that Defendants submitted false claims to the United States because Defendants

knowingly were not in compliance with requirements of the Higher Education Act, which were

prerequisites for payment of the claims.[2] Defendants move to dismiss the False Claims counts

of the Second Amended Complaint that allege violations of the Higher Education Act (HEA)

related to job placement rates, licensing requirements, and the 70 Percent Rules. Defendants

argue that such claims should be dismissed with prejudice because Relators have failed to cure

---

[1]According to the Second Amended Complaint, Relators' claims under the False Claims Act are brought pursuant to 31 U.S.C. §§ 3729(a)(1) and 3729(a)(2). However, a reading of the Second Amended Complaint makes clear that the claims are actually brought pursuant to §§ 3729(a)(1)(A) and 3729(a)(1)(B).

[2]This is one of three *qui tam* actions against Kaplan Higher Education Corp. that are before this Court pursuant to an order of the Judicial Panel on Multidistrict Litigation. Defendants have filed motions to dismiss in all three. Because this is the first filed of the three complaints, Defendants have not raised the first-to-file rule as a basis for dismissal in this case. However, it has been raised in the other *qui tam* actions.

the deficiencies in their Amended Complaint. For the reasons set forth below, the Motion is

granted in part and denied in part. It is denied as to the claims based on the 70 Percent Rules and

granted as to the claims based on job placement rates and licensing requirements.

## I.    Facts Alleged in the Second Amended Complaint and Procedural History

### A. General Allegations

Relator Victoria Gatsiopoulos worked for Defendant Kaplan Career Institute, ICM

Campus (ICM) from November 2000 until she was fired on December 4, 2007. Her last position

with ICM was as a Senior Career Advisor and Instructor. Relator Dolores Howland, now

Dolores Justice, worked for ICM from October 2000 to July 2006 as a full-time Instructor, a part-

time evening Instructor, and as Student Advisor. They allege that, from at least 2000 through the

present,[3] ICM, a wholly owned subsidiary of Kaplan Higher Education Corp. (Kaplan) and a

recipient of HEA federal student financial aid funds from the United States Department of

Education (DOE), submitted false claims, under 31 U.S.C. § 3729(a), to obtain funds to which it

was not entitled because it knew that it had not complied with certain requirements for payment.

In order to receive the federal student financial aid funds a school must certify to the

United States Government (Government) that it is in compliance with the HEA. As part of that

certification process, schools execute a Program Participation Agreement (PPA), under which

they agree to adhere to certain guidelines, including: (1) that the school will not provide any

---

[3]Although the Second Amended Complaint alleges that Defendants made false claims
from 2000 through the present, Relator Howland's employment with Defendants ended in July
2006 and Relator Gatsiopoulos's employment with Defendants ended in December 2007.
Therefore, Relators do not have personal knowledge of any events after December 2007.
Further, all of the specific allegations of dates and times alleged in the Amended Complaint and
the Second Amended Complaint fall during the 2000-2007 time period. Thus, the relevant time
period for purposes of the Second Amended Complaint is 2000-2007.

commission, bonus, or other incentive program based directly or indirectly upon success in securing enrollments or financial aid to any person or entity engaged in student recruiting or admission activities or in making decisions regarding the awarding of Title IV, HEA program funds; (2) if the school advertises using job placement rates, it will make available to prospective students the most recent available data concerning employment statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and (3) if the school advertises using job placement rates, it will make available to prospective students the relevant State licensing requirements of the State in which the school is located.  Defendants executed a PPA in order to receive federal student financial aid funds.

In addition to executing a PPA, a school must meet other eligibility requirements in order to receive federal student financial aid funds.  In order to receive loans through the Government's Direct Loan program and Federal Family Education Loan (FFEL) program, a school must comply with the 70 Percent Rules, 34 C.F.R. § 668.8(e), which require that an eligible program have a completion rate of at least 70 percent and have a job placement rate of at least 70 percent. Relators allege that Defendants did not meet these requirements.

*B.  The First Amended Complaint and Procedural History*

Relators filed their Second Amended Complaint after the Court granted in part Defendants' Motion to Dismiss the Amended Complaint.  The Amended Complaint contained three counts: (1) a violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A);[4] (2) a violation

---

[4]Section 3729(a)(1)(A) prohibits the knowing presentment of a false or fraudulent claim for payment to the United States.

of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B);[5] and (3) a claim for retaliation against

Gatsiopoulos.  The false claims counts were based on: (1) Defendants' use of an incentive

compensation plan; (2) Defendants' advertising job placement rates but not providing job

placement statistics or State licensing requirements; (3) Defendants' failure to comply with the

70 Percent Rules; and (4) Defendants' use of an ability to benefit test.  The Court denied the first

Motion to Dismiss as to Relators' claims based on Defendants' incentive compensation plans and

the retaliation claim and granted the motion with leave to replead as to Relator's claims based on

job placement rates and licensing requirements, and the 70 Percent Rules.  *See* DE-88.  The

Court dismissed with prejudice claims based on the "ability to benefit" test.  *See* DE-88.

Thereafter, Relators filed their Second Amended Complaint, which Defendants now seek to

dismiss in part.

　　　　In addition to challenging the sufficiency of the allegations in the Amended Complaint,

Defendants also challenged Relators' theory of liability, often referred to as the False

Certification theory.  Defendants argued that a false certification claim, a claim based on

Defendants falsely certifying that they were in compliance with the HEA, fails as a matter of law

because such certification was not a "condition of government payment."  The Court rejected this

argument and held that the False Certification theory is a valid theory of recovery in this case.

*See* DE-88.  Thus, after the first Motion to Dismiss, the Court had ruled that Relators had pled a

valid theory of recovery, had adequately pled violations of the False Claims Act based on

Defendants' incentive compensation plan, and that Relator Gatsiopoulos had adequately pled a

---

[5]Section 3729(a)(1)(B) prohibits the knowing use of a false record or statement material
to a false or fraudulent claim.

4

retaliation claim.

### C. The Second Amended Complaint

The Second Amended Complaint [DE-96] alleges that Defendants violated the PPA in three ways. First, Defendants compensated admissions representatives based directly on their enrollment success, including awarding trips to those admissions representatives who enroll more than their quota. Second, Defendants advertised job placement rates and then provided inaccurate information to attempt to substantiate the truthfulness of the advertisements. Third, Defendants advertised job placement rates but did not make available the State licensing requirements for the job.

According to the Second Amended Complaint, in order to receive certain Government funding, under the HEA, a program must have a substantiated graduation rate of at least 70%. In order to achieve this, Relators allege that Defendants manipulate the rate by encouraging instructors to change students' grades to raise the students' grade point averages to meet the minimum required for graduation. A school receiving certain HEA funds is also required to have a job placement rate of 70%. Relators allege that Defendants manipulate their job placement statistics in order to meet the 70% requirement. Together, these requirements are known as the 70 Percent Rules.

The Second Amended Complaint also claims that Defendants retaliated against Gatsiopoulos after she complained of unethical and illegal behavior. However, these retaliation allegations are not relevant to the instant motion to dismiss because the Court has previously held that Relators have sufficiently pled the retaliation claim and Defendants do not challenge the claim in their instant motion.

Based on these allegations, Relators have filed a three count Second Amended Complaint, alleging the same claims as in the Amended Complaint. Count I alleges a violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), by knowingly presenting a false claim for payment. Count II alleges a violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B), by knowingly using a false record or statement in order to obtain payment. Count III alleges a claim for retaliation against Gatsiopoulos. Defendants move for a partial dismissal of Counts I and II on three grounds: (1) Relators have failed to plead the existence of advertisements that use placement rates with the specificity required by Federal Rule of Civil Procedure 9(b); (2) Relators have failed to allege with the specificity required by Rule 9(b) that Defendants did not make job placement and licensing requirements available to prospective students; and (3) Relators have failed to allege that Defendants offered any academic programs subject to the 70 Percent Rules. Defendants do not challenge the sufficiency of the claims based on Defendants' incentive compensation plan.

## II.    Legal Standard for 12(b)(6) Motion to Dismiss

The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint. The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. It should be read alongside Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

6

When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, once a court "identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A complaint can only survive a 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555. However, a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

## III.    Analysis

Defendants argue that the alleged violations of the HEA related to job placement rates and licensing requirements do not meet the pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that claims of fraud, which include claims under the False Claims Act,[6] be pled with particularity. The Eleventh Circuit has stated:

---

[6]The Eleventh Circuit has recognized the importance of compliance with Rule 9(b) in actions under the False Claims Act (FCA):

> Requiring relators to plead FCA claims with particularity is especially important in light of the quasi-criminal nature of FCA violations (i.e., a violator is liable for treble damages). Rule 9(b) ensures that the relator's strong financial incentive to bring an FCA claim-the possibility of recovering between fifteen and thirty percent of a treble damages award-does not precipitate the filing of frivolous suits.

*U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006).

Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (internal quotations and citations omitted). Thus, under Rule 9(b) a plaintiff must plead "the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Id.* Defendants move to dismiss portions of Relators' claims because they have not met this standard.

### A. Relators Have Not Sufficiently Alleged Violations of the HEA's Advertising Rules

The thrust of Defendants' attack on the Relators' claims based on alleged advertisements is that Relators have not sufficiently alleged any advertisements by Defendants and, even if they have, Relators have not sufficiently alleged a failure to provide the underlying employment statistics or the State licensing requirements. The HEA requires that:

an institution that advertises job placement rates as a means of attracting students to enroll in the institution, the institution will make available to prospective students, at or before the time of application (A) the most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements, and (B) relevant State licensing requirements of the State in which such institution is located for any job for which the course of instruction is designed to prepare such prospective students.

20 U.S.C. § 1094(a)(8). Thus, in order to state a claim under this section of the HEA, Relators must first allege that Defendants advertised using job placement rates and then must allege that Defendants either failed to provide the underlying statistical data or failed to provide the relevant State licensing requirements. Specifically, Defendants argue that Relators have failed to

8

sufficiently allege that Defendants have actually advertised using job placement rates or have

failed to "make available" either the underlying employment statistics or the State licensing

requirements.  Thus, Defendants seek to dismiss these claims.  Having examined the pleadings,

even assuming that the alleged advertisements actually constitute advertisements,[7] Relators have

failed to allege a violation of the HEA's advertising rules because they have not sufficiently pled

that Defendants have failed to make available the underlying employment statistics or the State

---

[7]Defendants argue that Relators have not sufficiently pled the existence of any advertisements because the Second Amended Complaint alleges, as advertisements, only two documents – a "Student Consumer Information" booklet for the ICM campus and a document entitled "Student Disclosure Placement Rates."  The Second Amended Complaint alleges that the Student Consumer Information booklet is available on the Internet and the 2010-2011 version contains a table entitled "Job Placement Rates for Kaplan Career Institute: ICM Campus, Pittsburgh, PA," which contains job placement rates for students in each of its programs.  The Second Amended Complaint does not allege with particularity any other Student Consumer Information booklets.  Thus, the only Student Consumer Information booklet relied on by Relators is for 2010-2011, which is not the relevant time period at issue in this case.  Consequently, the 2010-2011 Student Consumer Information booklet would not constitute advertising for purposes of this action.

The second advertisement on which Relators rely is a document entitled "Student Disclosure Placement Rates," which the Second Amended Complaint alleges Defendants gave to prospective students.  Defendants argue that this document does not constitute advertising because it was not given to prospective students, only to enrolled students.  In support of this argument, Defendants point to the text of the document which refers to the "program you have enrolled in" and the signature line for the student to attest that he or she has read and understood the contents of the disclosure document.  However, at the motion to dismiss stage, the Court must presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff.  *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).  The Second Amended Complaint does allege that the "Student Disclosure Placement Rates" document was distributed to prospective students when they visited the school.  Thus, taking the allegations in the Second Amended Complaint as true, the Student Disclosure Placement Rates document is an advertisement because it is "a means of attracting students to enroll in the institution," as referenced in 20 U.S.C. § 1094(a)(8).  The Court also notes that the signature lines on the document refer to "Applicant," not "student," as would be expected if the document were only distributed to enrolled students.  Regardless of the wording of the document, if the document was distributed to prospective students, Relators have sufficiently alleged the existence of an advertisement.

licensing requirements.

*i. Relators Have Not Sufficiently Alleged That Defendants Failed to "Make Available" Employment Data*

Defendants argue that, even if one or both of the documents relied on by Relators constitute an advertisement, Relators have failed to allege that Defendants actually violated the HEA because Relators have not alleged that Defendants did not "make available to prospective students" the data on which job placement rates were based. Relators respond by arguing that the Court, in its order on Defendants' first motion to dismiss, found that Relators had adequately pled the "make available" element. Relators further argue that they have adequately pled the "make available" element by pleading that Defendants provided prospective students with the "Student Disclosure Placement Rates" document which contains false job placement rates and data. Thus, Relators argue that the "Student Disclosure Placement Rates" document constitutes both an advertisement and a disclosure of employment data.

First, the Court did not previously find that Relators had adequately pled this element. The Court's prior order simply found that Relators had not adequately pled the existence of any advertisement using job placement rates, thus warranting dismissal. Second, the Second Amended Complaint fails to adequately allege that Defendants failed to "make available" the employment statistics data because it does not allege what data was made available to prospective students, other than the "Student Disclosure Placement Rates" document, and it fails to allege how that data was false. The only specific allegations regarding false data are in reference to data provided to the Accrediting Council for Independent Colleges and Schools (ACICS). Thus, the Second Amended Complaint is devoid of any specific factual allegations

10

that Defendants provided false data *to prospective students* or did not make available to prospective students the data underlying the advertised job placement rates. Because Relators claim is based on a violation of 20 U.S.C. § 1094(a)(8), Relators must allege with particularity what data was made available to students and why it was false or that Defendants did not make the data available to prospective students. While Relators have alleged what data was given to prospective students, the "Student Disclosure Placement Rates" document, Relators have not alleged with any particularity why the data in the "Student Disclosure Placement Rates" document was false or that Defendants actually failed to make data available.

     *ii. Relators Have Not Sufficiently Alleged That Defendants Failed to "Make Available" Relevant State Licensing Requirements*

Defendants also argue that Relators have failed to actually allege a violation of the HEA because they have not alleged with specificity that Defendants failed to make available the State licensing requirements for any particular program. Defendants point out that the Second Amended Complaint does not contain a single example, which sets forth the time, place, and manner, of Defendants' failure to provide State licensing requirements. In response, Relators rely on the following allegations in the Second Amended Complaint: (1) Defendants' catalog states that "requirements of certification, state board, national board licensing exams is the individual student's requirement;" (2) admission representatives have told prospective criminal justice students that with a criminal background the only job that they cannot pursue is that of a police officer, which is false; and (3) Defendants falsely informed students that they had passed background checks and would be able to secure employment when Defendants had not even conducted the background checks. None of these allegations relied on by Relators establish with

11

particularity that Defendants failed to make available State licensing requirements because the

Relators have not pled the who, when, and where required by Rule 9(b).  While each of these

general allegations establish that Defendants did not make available the licensing information

through particular means, they do not establish that Defendants did not make the licensing

information available through other means.  Because Relators have not provided a single specific

example, including the who, what, when, where, and how, of Defendants' alleged failure to

provide this information, Relators have failed to plead with the particularity required by Rule

9(b).

### B. Relators Have Adequately Pled Claims Based on the 70 Percent Rules

Last, Defendants maintain that the Second Amended Complaint does not adequately

allege that any of ICM's programs are subject to the 70 Percent Rules.  These rules require a 70%

graduation rate and a 70% job placement rate in order for a school to be eligible to receive

certain government student loan funds, specifically funds from the Direct Loan program and the

FFEL program.  The Second Amended Complaint alleges that, under the HEA, an institution is

eligible for federal financial assistance with respect to the Direct Loan and FFEL programs only

if it meets the 70 Percent Rules, as set out in 20 U.S.C. § 1088(b)(2)(A)(i) and 34 C.F.R. §§

668.8(d)(3)(v) and 668.8(e)(1)(i).  Relators further allege that all of ICM's programs, including

the Allied Health, Business, Criminal Justice, Design, Information Technology and Electrical

Technician programs, received federal financial assistance from the Direct Loan and FFEL

programs and thus must comply with the 70 Percent Rules.  Defendants assert that they could be

eligible for loans under the Direct Loan and FFEL programs based on 34 C.F.R. § 668.8(d)(1) or

(2), which do not require compliance with the 70 Percent Rules.  Thus, Defendants argue that

Relators must allege more than participation in the Direct Loan and FFEL programs in order to have a claim based on the 70 Percent Rules.

Defendants first maintain that the Court, in its order on the first Motion to Dismiss, has already held that Defendants' programs could be eligible for the Direct Loan and FFEL programs under other statutory provisions or regulations. However, Defendants misinterpret the Court's prior order. In that order, the Court simply held that nothing in the Amended Complaint established that any of Defendants' programs fell within the 70 Percent Rules or which programs were or were not in compliance with the 70 Percent Rules. *See* DE-88. Thus, the Court's earlier order is not dispositive of this issue.

Second, Defendants assert that Relators have not identified specific programs that are eligible under 34 C.F.R. § 668.8(d)(3) and thus subject to the 70 Percent Rules. However, the Second Amended Complaint alleges that all of Defendants' programs at ICM are eligible under 34 C.F.R. § 668.8(d)(3), including the Allied Health, Business, Criminal Justice, Design, Information Technology and Electrical Technician programs. Thus, Relators have identified the specific programs that they assert must comply with the 70 Percent Rules.

Third, Defendants argue that they are eligible for participation in the Direct Loan and FFEL programs based on 34 C.F.R. § 668.8(d)(1) or (2) and do not operate any programs that have obtained eligibility under 34 C.F.R. § 668.8(d)(3). The Second Amended Complaint, however, alleges that all of Defendants' programs are eligible programs under 34 C.F.R. § 668.8(d)(3). Because the Court must take Relators' well-pled allegations as true, for purposes of this motion to dismiss, Relators have adequately pled which programs must comply with the 70 Percent Rules by alleging that all of Defendants' programs must comply with the Rules and

13

setting forth the specific programs. Therefore, whether Defendants actually obtained their eligibility for participation in the Direct Loan and FFEL programs based on 34 C.F.R. § 668.8(d)(1), (2) or (3) is an issue of fact more appropriately dealt with on summary judgment. Consequently, the Motion to Dismiss as to claims based on the 70 Percent Rules is denied.

## IV. Conclusion

Having had three opportunities to plead their claims, it is apparent that Relators have no facts that will cure the specific defects in the Second Amended Complaint, which are outlined above. Thus, any further leave to replead would be futile. Therefore, based on this Order and the Court's prior Order Granting in Part Motion to Dismiss [DE-88], Relator's Second Amended Complaint shall proceed on the following three claims: (1) violations of the False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B), based on Defendants' alleged incentive compensation program; (2) violations of the False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B), based on the 70 Percent Rules; and (3) Gatsiopoulos' retaliation claim. Further, Realtors' theory of liability under the False Claims Act – False Certification – is a valid theory of liability. Accordingly, it is hereby

ORDERED that Defendants' Motion to Dismiss Relators' Second Amended Complaint [DE-97] is GRANTED in part and DENIED in part:

a) All claims based on job placement rates and licensing requirements are DISMISSED with prejudice.

b) The Motion is DENIED as to all claims based on the 70 Percent Rules.

c) Defendants shall file their answer to the viable portions of the Second Amended

Complaint no later than **August 24, 2011.**

DONE AND ORDERED in Miami, Florida, this 9ᵀᴴ day of August, 2011.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:    All counsel of record

15